TEN MILE INDUSTRIAL PARK, Property Owners Association, Inc., K & H Enterprises, Inc., Wheatland Corporation, Ten Mile Village, Inc., Monkey Ward Land Co., Inc., K & K Land and Development Co., a partnership, Darrel Hoberg, Gwenn Hoberg, Ronald Koenekamp, Karen Koenekamp, Dale Harrington, Wanda Harrington, William W. Kramer, Janet A. Kramer and Maryon Wilson, Plaintiffs-Appellants,

v.

WESTERN PLAINS SERVICE CORPORATION, a South Dakota corporation, John P. Clark, Frank D. Everett, Lloyd K. Pugh, Curtis L. Cameron, E.W. Boyles and Floyd Snyder, Jr., all as individuals, as directors of WPSC, as members of WPSC's Executive Committee and as officers and employees of each of their respective S & Ls, William R. Simpson, Elmer Koehn, Pat Bohan all as individuals, as directors of WPSC and as employees and officers of their respective S & Ls, United Federal Savings & Loan, Aberdeen, South Dakota, Mitchell Home Savings & Loan, Mitchell, South Dakota, First Federal Savings & Loan, Rapid City, South Dakota, First Federal Savings & Loan, Watertown, South Dakota, Yankton Savings & Loan, Yankton, South Dakota, as South Dakota S & Ls, as stockholders of WPSC, as employers of the directors and members of the executive committee of WPSC, and principals of their agents, and Midwest Federal Savings & Loan Association, a North Dakota Savings and Loan as principal of its agents, Defendants-Appellees.

Charles HUBBELL, Yvonne Hubbell, Lincoln Homes, a Wyoming corporation, James H. Tolhurst, Carol Tolhurst, David J. Tolhurst, Tolhurst Construction, Inc., a Wyoming corporation, Tolhurst Construction, Inc., a Utah corporation, and Edward R. Brandt, Plaintiffs-Appellants,

v.

WESTERN PLAINS SERVICE CORP., a South Dakota corporation; Delbert M.

Bjordahl, as an employee of WPSC and agent of S & Ls; Ron L. Brown, as an agent of WPSC; John P. Clark, Edward Meekins, Frank D. Everett, Lloyd K. Pugh, Curtis L. Cameron, E.W. Boyles, Floyd Synder, Jr., all as individuals, as directors of WPSC, as members of WPSC Executive Committee and as officers and employees of each of their respective S & Ls; Elmer Koehn, Pat Bohan, M.O. Broschat, all as individuals, as directors of WPSC and as employees and officers of their respective S & Ls, United Federal Savings & Loan, Aberdeen, South Dakota; First Federal Savings & Loan, Rapid City, South Dakota; Home Trust Savings & Loan, Vermillion, South Dakota; First Federal Savings & Loan, Watertown, South Dakota; Yankton Savings & Loan, Yankton, South Dakota, as South Dakota S & Ls, as stockholders of WPSC, as employers of the directors and members of the Executive Committee of WPSC, and as principals of their agents, WPSC, Bjordahl and Brown; and Midwest Federal Savings & Loan Association, a North Dakota Savings and Loan as principal of its agents, Defendants-Appellees.

Nos. 84–2386, 84–2387.

United States Court of Appeals,
Tenth Circuit.

Feb. 2, 1987.

Jack R. Gage, Hanes, Gage & Burke, P.C., Cheyenne, Wyo., for plaintiffs-appellants.

James L. Applegate (Glenn Parker, Hirst & Applegate, with him on the brief) Hirst & Applegate, Cheyenne, Wyo., for defendants-appellees Mitchell Home Sav. & Loan, William R. Simpson, Home Trust Sav. & Loan, Vermillion, S.D.

Paul J. Hickey (Mary L. Scheible, Bagley, Hickey, Evans & Statkus, with him on the brief) Bagley, Hickey, Evans & Statkus, Cheyenne, Wyo., for defendants-appellees Lloyd K. Pugh, Curtis L. Cameron, John P. Clark, Frank D. Everett, E.W. Boyles, Floyd W. Snyder, Jr., First Federal Sav. & Loan of Rapid City, S.D., First Federal Sav. & Loan of Watertown, S.D., United Federal Sav. & Loan of Aberdeen, S.D., and Yankton Sav. & Loan of Yankton, S.D.

Ward A. White, Guy, Williams, White & Argeris, Cheyenne, Wyo., for defendants-appellees Pat Bohan, M.O. Broschat, and Midwest Federal Sav. & Loan Ass'n, a N.D. Sav. & Loan Ass'n.

Before BARRETT, MOORE and BALDOCK, Circuit Judges.

BALDOCK, Circuit Judge.

Cases 84–2386 (Ten Mile) and 84–2387 (Hubbell) have been consolidated on appeal for purposes of record, briefing, argument and submission. Due to the similarity of the issues, both cases will be decided in this order and judgment. To the extent an

issue is unique to only one of the cases, the discussion of that issue will be expressly limited to that case. References to the record on appeal will be made jointly. The first reference will be to the record in 84–2386, and the second reference to 84–2387. Where the reference is to only one record on appeal, a blank will be left or the single reference will be expressly indicated.

Plaintiffs-appellants in both of these cases appeal the district court's dismissal of their claims against the respective defendants-appellees. Appellees filed motions to dismiss the claims against them for lack of personal jurisdiction. Fed.R.Civ.P. 12(b)(2). The district court concluded that it did not have jurisdiction over the appellees, and dismissed the claims against them. We affirm.

The facts pertinent to this appeal may be easily summarized despite the number of parties and separate transactions. Western Plains Service Corporation (WPSC), a South Dakota corporation, made loans to the several appellants in these cases for various Wyoming real estate projects. WPSC is owned by several South Dakota savings and loan associations, and its executive committee is made up of officers or directors from each association. These savings and loans (S & L's), along with a North Dakota S & L, entered into loan participation agreements with WPSC. The S & L's, through the participation agreements, advanced money to WPSC. WPSC then loaned this money out to various developers, including the appellants.

The various projects of the appellants all failed, the appellants defaulted on their obligations to WPSC, and WPSC began foreclosure proceedings. Ten Mile Industrial Park conveyed its property to WPSC by deed in lieu of foreclosure, and WPSC then conveyed the property to Plateau Development Corporation, a Wyoming corporation owned by the same S & L's which had advanced the money to WPSC for the Ten Mile loan. Rec. vol. I at 314, ___. Tolhurst, one of the appellants in the Hubbell case, executed quitclaim deeds on August 14, 1981, and a deed in lieu of fore-closure on October 9, 1981, in favor of WPSC. Rec. ___, vol. I at 121–129. WPSC in turn conveyed the property to those associations which had advanced money to WPSC for the Tolhurst loan, giving each S & L a specified percentage of interest in the property. Rec. ___, vol. II at 339–340.

The appellants brought suit in Wyoming federal court against WPSC, its president and an employee/agent, the officers and directors of WPSC, the stockholders of WPSC, one S & L who participated in the loans but was not a stockholder, and the chief executive officer and senior vice president of this participating S & L. Appellants' complaints alleged breach of contract for not loaning all monies promised, fraud, negligence on the part of the executive committee, illegal tying arrangements (Hubbell only), tortious interference with business relationships, slander of business reputation and credit (Hubbell only), and sought punitive damages. Rec. vol. I at 1–17, vol. I at 1–17. Appellants also sought to disregard the corporate status of WPSC. The parties agreed to dismiss WPSC from the cases because it was insolvent. Rec. vol. I at 389, vol. II at 648. The president of WPSC, as well as the alleged employee/agent of WPSC, were not named in the Ten Mile case and not served in the Hubbell case because they had filed for bankruptcy. The S & L's and their chief executive officers who were only directors of WPSC were dismissed from the cases by the district court.

Appellants do not challenge any of the above dismissals. Nevertheless, they are appealing the district court's dismissal of certain appellees for lack of personal jurisdiction. Among the appellees are six members of the executive committee: Pugh, Cameron, Clark, Everett, Boyles and Snyder. These individual appellees also were the chief executive officers of their respective S & L's, which S & L's were among the several shareholders of WPSC. The S & L's which employed Cameron and Everett have ceased doing business, and have since been taken over by a third S & L. Neither the former associations nor the S & L

which took them over are parties to this appeal. However, the associations which employed the remaining four executive committee appellees are themselves appellees in these cases: First Federal Savings and Loan of Rapid City, South Dakota; First Federal Savings and Loan of Watertown, South Dakota; United Federal Savings and Loan of Aberdeen, South Dakota; and Yankton Savings and Loan of Yankton, South Dakota.

In addition, Home Trust Savings and Loan, Vermillion, South Dakota, one of the shareholders in WPSC, is an appellee in the Hubbell case due to its participation in the Tolhurst loan and its ownership interest in the Tolhurst property. Finally, Midwest Federal Savings and Loan, Minot, North Dakota, as well as its chief executive officer (Broschat) and a senior vice president (Bohan), are appellees in both cases due to Midwest Federal's participation in the Ten Mile and Tolhurst loans, its interest in Plateau Development Corporation which holds the Ten Mile property, and its ownership interest in the Tolhurst property. Midwest Federal was not a shareholder in WPSC, nor were Broschat or Bohan on WPSC's executive committee.

One group of appellees argues that this appeal should be dismissed as moot because appellants have filed a similar action in South Dakota federal court after the dismissals in these cases. These appellees contend that the filing of the action in South Dakota constitutes appellants' acquiescence in the Wyoming judgment, thus effectively mooting the appeal.

The mootness doctrine arises from the case or controversy requirement of article III, section 2 of the United States Constitution. *Thournir v. Buchanan,* 710 F.2d 1461, 1462 (10th Cir.1983). The doctrine ensures that the federal courts will decide only cases involving actual controversy. *Leader Clothing Co. v. Fidelity & Casualty Co. of N.Y.,* 227 F.2d 574, 576 (10th Cir.1955). "Generally an appeal should be dismissed as moot when events occur that prevent the appellate court from granting any effective relief." *Thournir v. Bu-*

*chanan,* 710 F.2d at 1463. "[W]here the order appealed from has been complied with and the controversy thereby extinguished, the appellate court will not proceed to judgment." *Leader Clothing Co. v. Fidelity & Casualty Co. of N.Y.,* 227 F.2d at 576.

In the present case, the filing of the action in South Dakota does not constitute a voluntary acquiescence with the district court's order that would extinguish the controversy. Rather, the South Dakota filing itself demonstrates that the controversy between the parties is ongoing. The South Dakota filing does not prevent this court from granting effective relief. A decision in favor of appellants would restore their choice of forum, thus allowing them to continue their action in Wyoming rather than South Dakota. Because the controversy between the parties continues, and a reversal of the district court would grant effective relief to appellants, we decline to dismiss this appeal as moot.

Appellants first contend that the appellees are precluded from raising the issue of personal jurisdiction because of statements contained in the pretrial order in the consolidated cases of *Zimmerman v. First Federal Savings and Loan Association of Rapid City,* Nos. C82–0026–B and C82–399–B (D.Wyo.) *appeals docketed,* Nos. 84–1586 and 84–1631 (10th Cir. May 1, 1984, and May 8, 1984). Appellants claim that the issue of personal jurisdiction was fully and fairly litigated in *Zimmerman,* the issue was decided against appellees, and thus the appellees cannot raise personal jurisdiction in the present cases.

The principles of res judicata apply to questions of jurisdiction. *American Surety Co. v. Baldwin,* 287 U.S. 156, 166, 53 S.Ct. 98, 101, 77 L.Ed. 231 (1932). "Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based upon the same cause of action." *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979). The doctrine of res judicata bars the relitigation of

issues that were or could have been raised in the first action. *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). However, the res judicata doctrine cannot be applied in the present case because the appellants were not parties, or in privity with the parties, in the *Zimmerman* case.

■ The mutuality requirement that precludes the application of res judicata in this case does not preclude the invocation of the doctrine of collateral estoppel. Under certain circumstances, a litigant who was not a party to a federal case may use estoppel offensively in a subsequent federal suit against the party who lost on the decided issue in the first case. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. at 326–31, 99 S.Ct. at 649–51. "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. at 94, 101 S.Ct. at 414. However, the concept of collateral estoppel may be used only when the party against whom the earlier decision is asserted had a full and fair opportunity to litigate that issue in the earlier case. *Id.* at 95, 101 S.Ct. at 415.

■ Several of the appellees in the present case, Midwest Federal, Broschat, Bohan and Home Trust Savings and Loan, were not parties to the *Zimmerman* case. Furthermore, no showing has been made that these appellees exercised, or could have exercised, any control over the *Zimmerman* litigation such that they actually participated in the litigation and were given the necessary opportunity to litigate the jurisdictional issue. Thus, these appellees did not have a full and fair opportunity to litigate the personal jurisdiction issue in *Zimmerman*, and the *Zimmerman* case may not be used to collaterally estop these appellees from raising the personal jurisdiction issue.

■ Neither should collateral estoppel be applied to preclude the remaining appellees, who were parties to the *Zimmerman*

case, from raising the personal jurisdiction defense in the present cases. In order to apply collateral estoppel, the issue sought to be precluded must have been actually and necessarily determined by the court in the first action. *Montana v. U.S.*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979). In *Zimmerman*, the personal jurisdiction issue was raised and briefed as it pertained to the defendants' contacts and activities in that case. However, we find no evidence in the record that the jurisdictional issue was actually or necessarily decided in *Zimmerman*.

■ Appellants contend that the district court's statement in the *Zimmerman* pretrial order that the court "has jurisdiction over all the parties," Rec. vol. I at 346, vol. II at 601, precludes the appellees from raising the personal jurisdiction issue in the present cases. However, the district court, in outlining the issues for trial in that same pretrial order, noted that the defendants "allege that the Court lacks personal jurisdiction over them." Rec. vol. I at 352, vol. II at 607. This latter statement demonstrates that the jurisdictional issue was still being contested at the time of the pretrial order.

According to the executive committee appellees and the S & L's they represent, the motion to dismiss for lack of personal jurisdiction made in *Zimmerman* was denied, but defendants were given an express right to renew the motion later in the proceedings. The defendants ultimately failed to renew the motion, so no further determination as to personal jurisdiction was made by the trial court. Brief of appellees Pugh, et al., at 17; rec. vol. I at 366–67, vol. II at 622–23. Appellants do not challenge appellees' characterization of these occurrences in *Zimmerman*. Furthermore, the trial judge in the present cases, who also served as trial judge in *Zimmerman*, stated, in reference to the *Zimmerman* jurisdictional motions: "My recollection is that I took the motion to dismiss the members of the executive committee under advisement until the end of the case and after the jury verdict

came in and then didn't have to decide it." Rec. vol. II at 37, vol. III at 37. Our review of the record reveals that the issue of personal jurisdiction was never the subject of a final determination by the district court in *Zimmerman.* Thus, the jurisdictional statement in the *Zimmerman* pretrial order does not preclude appellees' from raising the issue of personal jurisdiction in the present cases.

Finally, appellants contend that the district court erred in dismissing the actions against the respective appellees for lack of personal jurisdiction. In attempting to demonstrate jurisdiction over the appellees, appellants point to the appellees' participation in the loan transactions underlying both the Ten Mile and Hubbell cases, their ownership interest in WPSC, their status as members of the WPSC executive committee, and their alleged ownership of real property in Wyoming.

■ The district court is given discretion in determining the procedure to employ in considering a motion to dismiss for lack of jurisdiction, and "may gather evidence on the question of jurisdiction by affidavits or otherwise in an effort to determine the facts as they exist." *Schramm v. Oakes,* 352 F.2d 143, 149 (10th Cir.1965). "The plaintiff bears the burden of establishing personal jurisdiction over the defendant. Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing." *Behagen v. Amateur Basketball Ass'n of U.S.A.,* 744 F.2d 731, 733 (10th Cir.1984), *cert. denied,* 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985).

■ In ascertaining the facts necessary to establish jurisdiction, the district court must accept as true the allegations set forth in the complaint to the extent they are uncontroverted by defendant's affidavits. *Behagen v. Amateur Basketball Ass'n of U.S.A.,* 744 F.2d at 733. However, only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as

true. *Mitchell v. King,* 537 F.2d 385, 386 (10th Cir.1976). "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Behagen v. Amateur Basketball Ass'n of U.S.A.,* 744 F.2d at 733.

■ In light of these guidelines, and in the absence of a full evidentiary hearing, a district court relying on documentary evidence in its consideration of a motion to dismiss may not weigh the factual evidence. Thus, the determination involves an application of the law to the facts as set forth in the affidavits and complaints, favoring the plaintiff where a conflict exists, as well as a determination as to the legal sufficiency of plaintiff's jurisdictional allegations in light of the facts presented. The appellate court, in reviewing the documentary evidence presented, is in as good a position as the district court to determine whether appellants have made a prima facie showing of personal jurisdiction. We therefore believe it is appropriate to review the district court's ruling under the nondeferential *de novo* standard. *See Hohri v. United States,* 782 F.2d 227, 241 (D.C. Cir.1986) (applying "independent review" standard to district court's determination of subject matter jurisdiction based on documentary evidence outside of pleadings).

All of the appellees herein are North Dakota or South Dakota residents or business associations. In order for the Wyoming court to exercise personal jurisdiction over such appellees, appellants must show that appellees' actions within Wyoming satisfy the requirements of the Wyoming long arm statute, Wyo. Stat. § 5–1–107 (1977), and the due process clause of the fourteenth amendment. *Shanks v. Westland Equipment and Parts Co.,* 668 F.2d 1165, 1167 (10th Cir.1982). The Wyoming statute incorporates the minimum contacts standards adopted in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and extends the Wyoming court's jurisdiction to the limits of the due

process clause. *First Wyoming Bank, N.A., Rawlins v. Transmountain Sales and Leasing, Inc.,* 602 P.2d 1219, 1221 (Wyo.1979).

The Wyoming Supreme Court has construed the Wyoming long arm statute in light of *International Shoe,* and stated that the plaintiff must establish the existence of three criteria in order to demonstrate a basis for jurisdiction over a nonresident defendant:

(1) The defendant purposefully availed itself of the privilege of acting within the forum state or of causing important consequences there;

(2) The cause of action arises from the consequences in the forum state of the defendant's activities; and

(3) The activities of the defendant or the consequences of those activities have a substantial enough connection with the forum state to make the exercise of jurisdiction reasonable.

*Markby v. St. Anthony Hospital Systems,* 647 P.2d 1068, 1073 (Wyo.1982). "[I]f the cause of action did not arise from the activities of the defendants in Wyoming, they are not amenable to service under the [Wyoming] long arm statute." *Cozzens v. Piper Aircraft Corp.,* 514 P.2d 1375, 1379 (Wyo.1973).

Appellants first attempt to establish appellees' minimum contacts with Wyoming through appellees' involvement in the loan participation agreements. Appellants contend that, through these participation agreements, the appellees acquired an interest in the underlying mortgages, and thus an interest in Wyoming real property. However, as the district court notes, the participation agreements were executed in North Dakota and South Dakota, and gave the appellees no more than a chose of action as to WPSC. The agreements create no rights between appellants and appellees. *Hibernia Nat. Bank v. Federal Deposit Ins. Corp.,* 733 F.2d 1403, 1407 (10th Cir. 1984) (the " 'participants' [appellee S & L's] can look solely to the lead [WPSC] for satisfaction of their claims because they are not themselves creditors of the borrowers and cannot assert creditor claims against the borrowers"). Thus, appellees acquire no interest in the mortgage loans between appellants and WPSC, or the property underlying such loans. *Id.* at 1408. Our review of the participation agreements confirms the correctness of the district court's conclusion that the agreements give appellees only an interest in the loans, and a chose in action as to WPSC. The agreements expressly provide that "the Seller [WPSC], thereafter will continue to hold legal title to such loan as trustee" for the participating S & L's. Rec. vol. I at 239, vol. I at 78. Thus, the acquisition of the participation interest by appellees does not constitute a minimum contact sufficient to establish personal jurisdiction over the appellees in Wyoming.

Appellants also contend that, through their participation in the loans, appellees placed money into the stream of commerce that had foreseeable consequences in Wyoming, and are thus subject to personal jurisdiction under the rationale set forth in *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). However, the Court in *Worldwide Volkswagen* expressly noted that foreseeability of consequence in the forum state, standing alone, is insufficient to establish personal jurisdiction. *Id.* at 295, 100 S.Ct. at 566. "[I]nstead, the Court identified the foreseeability necessary to the due process analysis as 'the defendant's conduct and connection with the forum State are such that [they] should reasonably anticipate being haled into court there.' " *Brownlow v. Aman,* 740 F.2d 1476, 1481 (10th Cir.1984) (quoting *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. at 297, 100 S.Ct. at 567). Thus, appellants must demonstrate the presence of "those affiliating circumstances that are a necessary predicate to any exercise of state-court jurisdiction" in order to exercise jurisdiction over appellees. *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. at 295, 100 S.Ct. at 566. Appellants have failed to show such affiliating circumstances in these cases.

As noted, the participation agreements were executed in North and South Dakota, and gave appellees a chose in action as to WPSC. The participation agreements created no relationship between appellees and appellants. The Wyoming loans were entered into and administered by WPSC, and the loan agreements created rights and obligations between WPSC and appellants only. Under these circumstances, where appellees have simply executed a participation agreement with a South Dakota company, we cannot say as a matter of law that appellees have purposefully availed themselves of the privilege of conducting activities in Wyoming, *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), so as to reasonably anticipate being haled into court in Wyoming. Appellants are therefore not subject to Wyoming jurisdiction on the basis of *Worldwide Volkswagen.*

Appellants contend further that the participation agreements created an agency relationship between WPSC and its managing agents as agent, and appellee S & L's as principals. Appellants argue that this agency relationship subjects appellees to jurisdiction for their agents' activities in the forum state. *See, e.g., Burchett v. Bardahl Oil Co.,* 470 F.2d 793 (10th Cir. 1972). However, the participation agreements themselves specify that WPSC is not to act as agent for the S & L's. Rec. vol. I at 241, vol. I at 80. Consistent with the language of the participation agreement, the district court expressly concluded that WPSC was an independent contractor of the appellee S & L's. Furthermore, appellees have offered affidavits indicating that neither WPSC nor its representatives (specifically Brown and Bjordahl) were given

authority to act as agents for appellees. Appellants have failed to offer evidence sufficient to make a prima facie showing of an agency relationship between WPSC and the appellee S & L's so as to impute WPSC's Wyoming activities to appellees.[1]

Appellants next contend that the S & L shareholders of WPSC and the individuals making up WPSC's executive committee had the ability to control the activities of WPSC and used WPSC as a shell, or conduit, through which to conduct their own affairs. Thus, appellants argue that the contacts of WPSC, the alleged alter ego of appellees, should be attributed to the appellees. We agree with the district court's rejection of this theory.

The Wyoming Supreme Court has set forth certain guidelines for determining when the acts of the corporation may be attributed to the individuals comprising that corporation. "Ordinarily, a corporation is a separate entity distinct from that of individuals comprising it. * * * Each case involving the disregard of the separate entity doctrine must be governed by the special *facts* of that case." *Opal Mercantile v. Tamblyn,* 616 P.2d 776, 778 (Wyo.1980) (emphasis in original). "For a corporation to be accorded treatment as a separate entity, it must exist and function as such and not be the alter ego of the person owning and controlling it and cannot be used or ignored just to fit the convenience of the individual." *AMFAC Mechanical Supply Co. v. Federer,* 645 P.2d 73, 79 (Wyo.1982).

Before a corporation's acts and obligations can be legally recognized as those of a particular person, and vice versa, it must be made to appear that the

---

1. Appellants attempt to demonstrate an agency between WPSC and the participating S & L's through cursory reference to an agreement between WPSC and Ten Mile (the appellee S & L's were not parties to this agreement). The referenced agreement simply sets forth the terms by which Ten Mile will reimburse WPSC for the additional amounts paid by WPSC as a result of Ten Mile's failure to obtain monies at the agreed upon rate of interest. The language in the agreement relied upon by appellants to demonstrate the agency merely references the partic-

ipation of the appellee S & L's, and does not create a general agency relationship that would supersede the express provisions of the participation agreements. In the context of securities law, this court has declined to impute the activities of the lead bank to the participant "based on routine participation in the loans." *Seattle-First National Bank v. Carlstedt,* 800 F.2d 1008, 1011 n. 2 (10th Cir.1986). We likewise decline to impute WPSC's activities to appellee S & L's based solely on their participation in the loans made by WPSC.

corporation is not only influenced and governed by that person, but that there is such a unity of interest and ownership that the individuality, or separateness, of such person and corporation has ceased, and that the facts are such that an adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud or promote injustice.

*Yost v. Harpel Oil Co.*, 674 P.2d 712, 717 (Wyo.1983) (quoting *Arnold v. Browne*, 27 Cal.App.3d 386, 103 Cal.Rptr. 775 (1972), *overruled on other grounds, Reynolds Metals Co. v. Alperson*, 25 Cal.3d 124, 158 Cal.Rptr. 1, 599 P.2d 83 (1979)). The Wyoming Supreme Court reiterated these principles in *Kloefkorn-Ballard Construction and Development, Inc. v. North Big Horn Hospital District*, 683 P.2d 656, 661 (Wyo. 1984).

The district court specifically found that the appellants failed to show evidence tending to demonstrate that WPSC was the alter ego of the stockholder appellees. Our review of the record confirms that the appellants have offered only conclusory allegations which are unsupported by affidavit or other competent evidence. Furthermore, appellees have submitted affidavits demonstrating that the stockholder S & L's were stockholders only and took no part in the management of WPSC. WPSC's contacts with Wyoming thus cannot be attributed to the appellee S & L's, and jurisdiction cannot be asserted over appellees through their ownership of WPSC.

Similarly, WPSC's contacts cannot be attributed to the individual appellees who were part of WPSC's executive committee. Where the acts of individual principals of a corporation in the jurisdiction were carried out solely in the individuals' corporate or representative capacity, the corporate structure will ordinarily insulate the individuals from the court's jurisdiction. 4 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 1069, p. 69 (1985 Supp.); *Wegerer v. First Commodity Corp. of Boston*, 744 F.2d 719, 727 (10th Cir.1984); *Wilshire Oil Co. of Texas v. Riffe*, 409 F.2d 1277, 1281 (10th Cir. 1969); *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F.2d 902, 906 (1st Cir. 1980). Jurisdiction over the representatives of a corporation may not be predicated on jurisdiction over the corporation itself, and jurisdiction over the individual officers and directors must be based on their individual contacts with the forum state. *Id.* "However, if the corporation is not a viable one and the individuals are in fact conducting personal activities and using the corporate form as a shield, a court may feel compelled to pierce the corporate veil and permit assertion of personal jurisdiction over the individuals." 4 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 1069, p. 69 (1985 Supp.)

Again, appellants have failed to offer sufficient evidence to show that the executive committee appellees were using WPSC to conduct personal affairs. Neither have appellants set forth any grounds for the exercise of jurisdiction over the executive committee appellees independent of those appellees' activities on the WPSC executive committee. The executive committee appellees, on the other hand, have presented affidavits stating that they have not conducted personal business in Wyoming, and that they have had no contacts with Wyoming other than in their representative capacities as WPSC executive committee members. Our review of the record confirms that no valid basis exists for the exercise of personal jurisdiction over the executive committee appellees by the district court.

The appellants also attempt to demonstrate the existence of personal jurisdiction over appellees by pointing to appellees' ownership interest in the Ten Mile and Tolhurst properties. As noted earlier, the Ten Mile property was transferred to WPSC, who in turn transferred it to Plateau Development Corporation. Plateau is owned by the S & L's who participated in the Ten Mile loan. Wyoming law recognizes that a corporation is ordinarily a separate entity distinct from the individuals comprising it. *Kloefkorn-Ballard Con-*

*struction and Development, Inc. v. North Big Horn Hospital District*, 683 P.2d at 661. Furthermore, "[i]t is an elementary principle of corporate law that a corporation and its stockholders are separate entities and that the title to corporate property is vested in the corporation and not in the owners of the corporate stock." *Sun Towers, Inc. v. Heckler*, 725 F.2d 315, 331 (5th Cir.), *cert. denied*, 469 U.S. 823, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984). Appellants have not come forth with evidence that would tend to undermine Plateau's status as a valid corporate entity. Thus, Plateau's ownership of the Ten Mile property cannot be attributed to the S & L's which own stock in Plateau, and personal jurisdiction over such appellees cannot be imposed through ownership of the Ten Mile property.

■ Neither can jurisdiction be imposed over appellees through ownership of the Tolhurst property. While the Tolhurst property is indeed directly owned by the S & L appellees, such ownership does not satisfy the requirements for the exercise of personal jurisdiction over the appellees by the Wyoming court. As previously discussed, both *Markby* and *Cozzens* require, as a predicate for personal jurisdiction, that a cause of action must arise as a result of a defendant's activities in Wyoming. The appellants' cause of action, as outlined in their complaints, did not arise as a result of appellees' ownership of the Tolhurst property. Appellants have brought no claim as to the property itself, nor do they claim any injury relating to rights and duties growing out of appellees' ownership of the property. Furthermore, appellants' have not attempted to attach the Tolhurst property in order to secure the payment of any judgment they might be awarded.

"[A]ll assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny," even where the assertion of such jurisdiction is based upon ownership of property within the forum state. *Shaffer v. Heitner*, 433 U.S. 186, 212, 97 S.Ct. 2569, 2583, 53 L.Ed.2d 683 (1977).

While the presence of appellees' property within Wyoming may be weighed as a contact or activity within the state, such ownership alone is not dispositive of the jurisdictional issue. *Id.* at 209, 97 S.Ct. at 2582. The S & L appellees' only activity within Wyoming is the ownership of the Tolhurst property. This activity did not give rise to appellants' cause of action, as the cause of action arose from alleged activities occurring well before appellees came into possession of the land. Appellants have failed to show appellees' contact with Wyoming with regard to the alleged activities giving rise to appellants' cause of action. Without more, it would be unreasonable to impose jurisdiction over appellees' simply because they later acquired title to the Tolhurst property.

■ Appellants' final contention that the district court's order of dismissal was premature is without merit. Appellants' were given full opportunity to develop and present a factual basis for their theories of personal jurisdiction. Appellants admit that they "did not get involved in the full blown Affidavit war that sometimes accompanies Motions to Dismiss and Motions For Summary Judgment for the reason that they knew Judge Brimmer had already ruled on the jurisdictional issue involving these same Defendants [in *Zimmerman*] and they felt the question was settled." Appellants' brief at 18. However, appellants' failure to fully litigate their position and provide adequate evidence supporting their claim because they thought the question was settled does not render the order of dismissal premature or in any way improper.

In summary, these appeals were not mooted by appellants' filing of similar suits in South Dakota, the appellees are not collaterally estopped from asserting the personal jurisdiction defense in these cases, and the district court was correct in concluding that it could not exercise jurisdiction over the appellees.

AFFIRMED.